## STATE v DUNN et

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 18446. Decided Dec. 15, 1941.

Frank T. Cullitan, Prosecuting Attorney, Cleveland; John Butler, Asst. Pros. Atty., Cleveland, for plaintiff-appellee.

J. H. Nacey, Cleveland, for defendant-appellant.

The facts are stated in the dissenting opinion of Morgan, J.

## OPINION

It is the opinion of the majority of this Court that the judgment of the Court of Common Pleas should be, and the same is hereby affirmed. Exceptions may be noted.

LIEGHLEY, PJ., SKEEL, J., concur.
MORGAN, J., dissents.

By MORGAN, J. (Dissenting):

Defendants, Dunn and Krause, were indicted for unlawfully operating on the public highway as a private motor carrier, a motor bus for the transportation of persons from Cleveland to Bainbridge Township, Geauga County, Ohio, without first obtaining a permit therefor from the Public Utilities Commission as required by §614-104 GC.

Krause was driving the motor bus as an employee of Dunn who had been continuously and solely engaged in the operation of passenger busses for hire under private contract since 1926.

The trial was had and a verdict of guilty was returned by the jury.

The principal error assigned by the defendants is that §614-104 GC and following sections, insofar as they apply to the transportation of passengers, violate the Fourteenth Amendment of the Constitution of the United States, and Art. I of the Constitution of Ohio.

The Motor Transportation Act became effective April 28, 1923. (110 O. L. 211) (now §614-84 to 102a incl. GC). This Act was considered by the Supreme Court in the case of **Hissem v Goran et, 112 Oh St 59** which held that the Act did not cover private motor carriers. In its opinion, the court said:

"There does not, therefore, upon principle, appear to be any sound basis for the exercise of public regulation of motor vehicles not dedicated to public use."

The terms "Motor Transportation Companies" and "private motor carriers" are defined in the statutes and in Administrative Order No. 125, issued by the Public Utilities Commission. The order provides that:

"The term 'motor transportation company' applies to all persons, firms or corporations engaged or proposing to engage in the business of transporting persons or property, or both, * * * for hire for the public in general." and, "the term 'private motor carriers' or 'contract carriers by motor vehicles' applies to all persons, firms or corporations engaging or proposing to engage 'for hire' in the business of private transportation of persons or property or both * * *, over the highways of the State of Ohio by motor propelled vehicles."

Despite the above dictum in the Hissem case, the General Assembly in 1935, passed the "Private Motor Carriers Act" (115 O. L. 547) (now **§614-103 to 120 GC inclusive**). There can be little doubt of the power of the General Assembly to provide for the reasonable regulation of private motor carriers. Such might include regulations as to size of vehicle, size or quality of tires, safety equipment, insurance of passengers and other similar requirements. Such regulations likewise might include the requirement that a private motor carrier first secure a permit from the Public Utilities Commission provided only that the condition laid down in the statute for the securing of such a permit shall not be so oppressive and unreasonable as to violate the provisions of the Federal and State Constitutions, which protect the rights and privileges of individual citizens.

In Nebbia v New York, 291 U. S. 502, paragraph 5 of the syllabus is as follows:

"The due process clause of the Fourteenth Amendment conditions the exertion of regulatory powers by requir-

ing that the end shall be accomplished by methods consistent with due process, that the regulation shall not be unreasonable, arbitrary or capricious and that the means selected shall have a real and substantial relation to the object sought to be attained."

It is my opinion that the requirements of §614-104 to 120 GC. inclusive, for regulating and granting permits to private motor carriers of passengers violate the Fourteenth Amendment to the Federal Constitution, and **Art. I of the Ohio Constitution.** My reasons for this opinion are as follows:

**Sec. 614-107 GC** authorizes the Commission to adopt rules prescribing the manner and form in which private motor carriers shall apply for permits and requires that such rules shall provide that any application for such a permit "shall contain the name or names of the persons, firms or corporations and their addresses with whom the applicant has contracted or proposes to contract as a private motor carrier".

**Sec. 614-107e GC** provides that any application shall have attached thereto an affidavit that a special contract of carriage in writing has been signed "by the applicant and each such employer and effective upon the granting by the Commission of the permit sought".

The Act was amended in 1939 by the addition of **§614-107f GC,** which provides the application for a permit shall be accompanied by said written contract which "shall be bi-lateral, shall specify the transportation service to be rendered for the contracting party employing such carrier * * * and shall provide for a series of shipments during a stated period of time".

**Sec. 614-108 GC** provides that notice of the filing of an application for a permit by a private motor carrier must be advertised for three consecutive weeks prior to hearing or granting the same, in a newspaper of general circulation published in the county of the applicant.

**Sec. 614-111 GC** provides that if the private motor carrier wishes to contract with some person or corporation for furnishing transportation other than those mentioned in the original application the carrier must give notice to the commission and this notice or application "to substitute or increase the persons, firm or corporation, employing such private motor carrier, shall, among other things, be in the form and governed as provided in case of an original application for a permit".

It follows that a private carrier cannot enter into a contract of hire with anyone not mentioned in the original application for a permit, without filing another application which must be advertised for three weeks in a newspaper, which must be accompanied by the written contract and provide "for a series of shipments during a stated period of time".

By these provisions of the Motor Carriers Act it is made illegal for a private motor carrier to enter into a contract of transportation with a lodge, school, football or baseball team, church, or Sunday School, or any similar organization, without a special permit therefor from the Public Utilities Commission which can be issued only after the application for such a permit has been advertised for three weeks. The contract for transportation must provide "for a series of shipments during stated periods of time".

The defendant, Dunn, testified that he has developed an extensive intrastate as well as interstate business as a private motor carrier. That in less than 10% of the contracts for the transportation of passengers is it possible to advertise the contract for three weeks before securing a permit, inasmuch as in the great majority of cases those desiring to contract for the services of a private motor carrier do not negotiate or contract for the carriage until a few days before the services are to be rendered. This statement is in accord with common knowledge in such matters. Also it is unusual that those seeking the service rendered by a private motor carrier desire to en-

gage it for a series of transportation services.

A private motor carrier cannot lose 90% of its business and still continue in business. The fact is that the private motor carriers act does not regulate, it destroys the passenger business of private motor carriers. In other words, the conditions imposed v the Act for the legal operation of a private motor carrier of passengers are so burdensome as to make successful operation of such a business virtually impossible.

A comparison of the statutes regulating motor transportation companies with those regulating private motor carrier companies reveals that the former are not hampered by the above described burdensome restrictions controlling the latter.

Sec. 614-103(5) GC specifically excepts motor transportation companies from the provisions regulating private motor carriers. It provides that motor transportation companies may enter into a special contract for the transportation of persons "in emergency motor vehicles under a special contract for the entire vehicle for each trip to or from any point on the route of such motor transportation company" provided only that the use of such emergency motor vehicle is reported and the taxes paid "as may be prescribed by the Commission".

The Commission has prescribed that "each motor carrier transporting passengers must report monthly to the Commission all emergency vehicles used during the month. Reports must be filed not later than the 20th of the month following the month in which such vehicles were used".

The effect of the above statutes and the rules prescribed by the Commission is to impose unreasonable restrictions and handicaps on "private motor carriers" and thereby to aid motor transportation companies in securing a monopoly on all "emergency" passenger transportation either to or from any point on the route of such company.

In my opinion, this is a gross discrimination in favor of the motor transportation companies as against private motor carriers that cannot be justified on any principle of reasonable regulation of the latter's business.

The above mentioned statutes have another result which could hardly have been considered by the General Assembly. If any person not living on the regular route of a motor transportation company and not desiring to be transported to a point on such route, wish at any time to hire the services of a motor carrier for passenger transportation, such persons can legally do so only by entering into a written contract for such transportation more than three weeks in advance so that time will be given for applying for and securing a permit from the Commission with three weeks advertising in between. This is clearly an unfair burden and an unjustified limitation on the right of persons so located to contract with a private motor carrier for passenger transportation.

A fundamental defect in the statutes providing for the regulation of private motor carriers is the failure to distinguish between the transportation of passengers on the one hand and of property on the other. All of the sections in §614-103 to 120 GC inclusive, by their terms, apply to the transportation of both persons and property. An examination, however, of these sections shows that the General Assembly must have had in mind, in enacting a number of them, only the transportation of property. For instance, §614-107f GC provides, as stated, that before the Commission shall issue any permit to a private motor carrier, the contract accompanying the application "shall provide for a series of shipments during a stated period of time". Such a provision may be quite reasonable as applies to the transportation of property but does it apply to passenger transportation? The word "shipments" suggests property but there is nothing in the section so limiting it. It is wholly indefensible as applying to the transportation of persons because contracts providing therefor are usually

only for single trips and §614-103(5) GC so recognizes when it refers to the vehicles engaged in such transportation as "emergency motor vehicles".

So the requirement for three weeks advertising of the application for a permit by a private motor carrier may be justified when applied to the transportation of property, but it is just as arbitrary and as indefensible when applied to the transportation of persons for the reasons already stated, as is the mandatory provision that the contract accompanying the application for a permit shall provide "for a series of shipments during a stated period of time".

The statement in Nebbia v New York, 296 U. S. 502, at page 525, is in point.

"A regulation valid for one sort of business or in given circumstances may be invalid for another sort or for the same business under other circumstances because the reasonableness of each regulation depended upon the relevant facts."

The only manner in which the defendant, Dunn, as a practical proposition, will be able to continue his intrastate business of transporting passengers is to become a common carrier and to secure, if he can, from the Public Utilities Commission, a certificate of convenience and necessity.

In Frost Trucking Co. v R. R. Commission, 271 U. S. 583, the facts were that The Frost Trucking Company was "engaged under a single private contract in transporting for a stipulated compensation, citrus fruits over the public highways between fixed termini".

California had passed an act which required that as a condition of the trucking company operating its trucks on the public highways between fixed termini, it must qualify as a public carrier. The Supreme Court held the California Act invalid, because in violation of the Fourteenth Amendment and said, in its opinion:

"It is very clear that the act as thus applied is in no real sense a regulation of the use of the public highways. It is a regulation of the business of those who are engaged in using them. Its primary purpose evidently is to protect the business of those who are common carriers in fact by controlling competitive conditions. Protection or conservation of the highways is not involved."

This applies verbatim to the present case.

The Supreme Court in the Frost Trucking Company case, based its decision on "the principle that a state is without power to impose an unconstitutional requirement, as a condition for granting a privilege".

To me, it seems clear that in this case the State of Ohio is seeking "to impose an unconstitutional requirement as a condition for granting a privilege" to the defendants to operate the business of a private motor carrier of passengers over the highways of the State.

That it is possible reasonably to regulate private motor carriers without destroying their business, is shown by the legislation enacted by the Congress of the United States. It is found in the Motor Carriers Act (1935) and as amended on June 29, 1938. This Act contains none of the unreasonable and discriminatory provisions which we find objectionable in the Ohio private motor carriers act. The defendant, Dunn, has been able without difficulty to qualify under this Federal Act and is in the possession of and is operating under an "Interstate Motor Coach Permit" issued by the Interstate Commerce Commission.

In the State's brief in this case it is stated that the defendant, Dunn, was renting a bus service "to the 'notorious' Arrow Club". It seems hardly necessary to point out that the constitutional question is the same whether the bus service in this case was to a 'notorious' club, or to a Sunday School picnic.

For the reasons stated, it is my opinion that the conviction of the defendants cannot be sustained and that there should be final judgment for the defendants.